R. Jeremy Adamson (12818)
Taylor J. Smith (17537)
**KUNZLER BEAN & ADAMSON, PC**
50 West Broadway Ste 1000
Salt Lake City Utah 84101
Telephone: (801)994-4646
*jadamson@kba.law*
*tsmith@kba.law*

*Attorneys for Nursa Inc.*

> If you do not respond to this document within applicable time limits, judgment could be entered against you as requested.

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| NURSA, INC., a Utah corporation,<br><br>    Plaintiff,<br><br>v.<br><br>OXFORD VALLEY HEALTH, LLC, a New Jersey limited liability company,<br><br>    Defendant. | **COMPLAINT**<br><br>Civil Case No. _____<br><br>Judge: _____<br><br>Magistrate Judge: _____ |

Plaintiff Nursa, Inc. ("**Plaintiff**" or "**Nursa**"), by and through counsel, alleges and complains against Defendant Oxford Valley Health, LLC ("**Oxford**") as follows:

### PRELIMINARY STATEMENT

1.      This is an action by Nursa for collection of unpaid invoices and fees, which collection arises from Oxford's failure to satisfy its payment obligations under the *Nursa ™ Terms of Service Agreement* (the "**Agreement**"), attached hereto as **Exhibit 1**, it accepted and agreed to upon commencing use of Nursa's services.

## JURISDICTION

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1).

## VENUE

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district and under 28 U.S.C. § 1404 because the parties have already contractually consented to venue in this district. *See Agreement* § 22.

## PARTIES

4.      Nursa, Inc. is a Utah corporation with its principal place of business in Murray, Utah.

5.      Oxford Valley Health, LLC, is a New Jersey limited liability company with a principal place of business in Toms River, New Jersey.

6.      Upon information and belief, Oxford's sole member, Isaac Rami, is an individual domiciled in New Jersey.

## STATEMENT OF FACTS

*The Agreement*

7.      Nursa is a software company that connects healthcare facilities with healthcare workers (or clinicians) operating as independent contractors. *Id.* §§ 1(c); 2; 8; 8(a); 8(f).

8.      Through Nursa's App (the "**App**"), a facility can post one-off job-shifts that need to be filled by a clinician. *Id.* §§ 1(a); 1(b); 1(c); 2.

9.      A clinician can then apply for a particular job posting, and if the facility is satisfied with the clinician's credentials, it can hire the clinician for the shift. *Id.* § 1(c); 2.

10.     An individual using the App on behalf of a facility warrants that they have authority to enter the agreement on the facility's behalf. *Id.* § 3.

11.     Once that individual clicks "I Agree," uses the App, signs or acknowledges the agreement, or creates a profile in the App, the facility enters and is bound by the Agreement. *Id.* §§ 3–4.

12.     Under the Agreement's terms, a facility cannot assert that the binding nature of the Agreement is ineffectual because it was executed in electronic form. *Id.* § 4.

13.     When a shift is posted on the App, Nursa presents the facility with an estimated charge the amount for which varies depending on (among other things) the current demand, timing, and type of service requested. *Id.* § 9(d).

14.     Each time a job is posted, the facility is responsible for understanding current pricing and agrees to the estimated charge. *Id.*

15.     Once a clinician has successfully completed and reported a shift, Nursa provides the report to the facility. *Cf. id* §§ 1(g); 8(c); 9(a); 9(d).

16.     Under the Agreement, the facility is obligated to verify each shift report. *Id.* § 9(a).

17.     The facility can verify a shift manually or can opt to allow the shift to be verified automatically if it does not manually verify a shift within 48 hours of receiving a report. *Id.*

18.     Per the Agreement, "[a]ny auto-verified shift report shall be deemed accepted by the parties as true and correct." *Id.*

19.     Once a shift report has been verified as described above, Nursa finalizes the charges, pays the clinician for the work completed, and invoices the facility. *Cf. id* §§ 1(g); 8(c); 9(a); 9(d).

20.    Once a charge has been verified and invoiced, the facility is obligated to satisfy that payment under the terms of the Agreement. *Id.* § 9(d); 9(e).

21.    If the facility disagrees with the contents of an invoice, it must report those errors, omissions, or corrections "within 30 days of the service date. After 30 days all Charges shall be deemed correct, accurate, and without objection," (the "**30-Day Period**"). *Id*. § 9(d).

22.    Failure to pay triggers a monthly late fee of 1.5% of the unpaid balance, multiplied against the bill balance and compounded daily. *Id.* § 9(e).

23.    Every party must keep its respective obligations under the Agreement—because invoices are based on verified shifts, for which Nursa has already paid, if a facility refuses to pay its invoices, then it essentially receives free work from the clinician, and Nursa is left to foot the bill. *See id* §§ 1(g); 8(c); 9(a); 9(d).

*Oxford's Use of the App and Acceptance of the Agreement*

24.    Beginning on June 1, 2022, Oxford began using the App to offer shifts pursuant to the Agreement.

25.    As anticipated, Oxford posted shifts, clinicians selected shifts, Oxford approved the clinicians, and the clinicians worked the shifts at three healthcare facilities operated by Oxford—Desert Peak Care Center, Mission Pines Nursing and Rehabilitation, and Mountain View Care Center.

26.    Each week, Nursa sent Oxford an invoice for services rendered, which constituted the shift report contemplated in the Agreement.

27.    Oxford manually verified many shifts and allowed many other shifts to be auto-verified.

4

28.    On the first of each month, Nursa provided Oxford with a monthly statement providing a list of all outstanding invoices, including the total outstanding balance.

29.    Oxford never contested its invoices or reported any errors, omissions, or corrections within the 30-Day Period.

30.    While Oxford made some payments, it eventually stopped paying.

31.    Nursa regularly engaged with Oxford regarding invoices and the outstanding balance, including regular bi-weekly calls throughout the bulk of 2023, to regularly review and discuss the outstanding balance.

32.    On August 1, 2023, because of Oxford's failure to pay, and only after it became apparent that ongoing dialogue would not result in payment, Nursa terminated Oxford's access to the App, as was its right under the Agreement. *Agreement*, §§ 9(e); 10; 16.

33.    By the time Nursa terminated the relationship, Oxford owed an outstanding principal balance of $4,162,911.14 and had accrued $440,134.46 in late fees.

34.    Despite Oxford's verification of shift reports, both manually and through the Agreement's auto-verification process, and despite Oxford's assent to the invoices—as demonstrated by Oxford's failure to notify Nursa of any objections, errors, omissions, or corrections within the 30-Day Period—Oxford has refused to pay these outstanding balances and late fees.

35.    In fact, despite numerous meetings with Nursa during which Oxford never raised these billing concerns, Oxford continued to use the App to find clinicians up until Nursa cut off Oxford's access on August 1, 2023.

36.    After Nursa declared the debt due, Oxford conveniently claimed that Nursa

overbilled and billed in error.

37.    But per the Agreement, the time for raising these concerns has passed, both as to the 48-hour opportunity to verify the shift reports and after the 30-Day Period.

38.    Oxford continues to owe an outstanding principal balance of $4,162,911.14 and as of the date of this complaint, has accrued an additional $780,896.85 in late fees for a total outstanding balance of $4,943,807.99, plus interest, compounding daily.

39.    Under the agreement, Nursa is now entitled to litigate this matter to recover the amounts owed. *See Agreement*, §§ 9(d); 9(e); 10; 12; 16; 17.

40.    Under the agreement Nursa is entitled to reimbursement for all expenses and costs incurred in collecting the debt, including attorney fees. *See Agreement*, §§ 9(e); 10; 25.

## FIRST CAUSE OF ACTION
### Breach of Contract

41.    Nursa hereby repeats and incorporates by reference the preceding paragraphs as if fully set forth herein.

42.    The Agreement is a valid and enforceable contract between Nursa on one hand, and Oxford on the other.

43.    Nursa has fulfilled its obligations under the Agreement.

44.    Oxford materially breached the Agreement when it failed to pay amounts owed for services rendered and for late payments.

45.    As a result of Oxford's breach of contract, Nursa has been damaged in an amount to be determined, but in no case less than $4,943,807.99 plus interest, as provided in the Agreement.

46.    Nursa is entitled to an award for its damages of $4,943,807.99 plus interest, as

6

provided in the Agreement, along with its attorney fees and costs, as provided in the Agreement.

## SECOND CAUSE OF ACTION
### Breach of the Covenant of Good Faith and Fair Dealing
*(In the Alternative)*

47. Nursa hereby repeats and incorporates by reference the preceding paragraphs as if fully set forth herein.

48. Inherent in the Agreement is an implied covenant of good faith and fair dealing in which each party promised that it would not conduct itself in a way that could interfere with the other party's ability to benefit from the Agreement.

49. Oxford made this promise and accepted this duty by entering the Agreement.

50. Oxford's refusal to pay the amounts owed, including amounts it does not dispute, is contrary to the mutually understood purpose of the agreement and Nusa's reasonable expectations and reliance.

51. As a result of Oxford's breach of the covenant, Nursa has been damaged in an amount to be determined, but in no case less than $4,943,807.99 plus interest, as provided in the Agreement.

52. Nursa is entitled to an award for its damages of $4,943,807.99 plus interest, as provided in the Agreement, along with its attorney fees and costs, as provided in the Agreement.

## THIRD CAUSE OF ACTION
### Unjust Enrichment
*(In the Alternative)*

53. Nursa hereby repeats and incorporates by reference the preceding paragraphs as if fully set forth herein.

54. Nursa conferred a benefit on Oxford by providing access to the App.

7

55. Oxford knew of and accepted that benefit by using and continuing to use the App to post shifts and hire clinicians to meet its needs at multiple facilities.

56. Oxford failed to compensate Nursa for the benefits provided.

57. As such, Oxford's acceptance and use of the benefits provided by the App would be inequitable if Nursa does not receive the value for the services provided.

58. Nursa conferred a benefit on Oxford in an amount to be determined, but in no case less than $4,943,807.99 plus interest, as provided in the Agreement.

59. Nursa has been damaged by Oxford's refusal to pay that amount in recompence for the benefit provided.

60. Nursa is entitled to an award for its damages of $4,943,807.99 plus interest, as provided in the Agreement, along with its attorney fees and costs, as provided in the Agreement.

## **PRAYER FOR RELIEF**

WHEREFORE, Nursa requests judgment against Oxford as follows:

a. That Oxford shall pay $4,943,807.99 plus interest, as provided in the Agreement, to Nursa, to compensate Nursa for Oxford's breach of the Agreement;

b. That Oxford shall alternatively pay $4,943,807.99 plus interest, as provided in the Agreement, to Nursa, to compensate Nursa for Oxford's breach of the covenant of good faith and fair dealing inherent in the Agreement;

c. That Oxford shall alternatively pay $4,943,807.99 plus interest, as provided in the Agreement, to Nursa, to compensate Nursa for the enrichment Nursa provided, that Oxford has received at Nursa's expense and without providing return value;

d. That Oxford shall additionally pay other consequential, compensatory, economic,

and equitable damages as applicable;

e.       That Oxford shall additionally pay interest, including prejudgment and post-judgement interest, on the foregoing sums;

f.       That Oxford shall additionally pay, as provided in the Agreement and additionally as allowable by law, any and all expenses, costs, and attorney fees Nursa has incurred in connection with its attempts to collect this payment, including this lawsuit; and

g.       That the Court award such other and further relief as it deems just and proper.

DATED: January 19, 2024

**KUNZLER BEAN & ADAMSON, PC**

*/s/ R. Jeremy Adamson*
R. Jeremy Adamson
Taylor J. Smith

*Attorneys for Nursa Inc.*

9