Matthew L. Lalli (6105)
John A. Wirthlin (14847)
**SNELL & WILMER L.L.P.**
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101-1531
Telephone: (801) 257-1900
Email: mlalli@swlaw.com
        jwirthlin@swlaw.com

*Attorneys for Defendant and Counter-Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **NURSA, INC.,** a Utah corporation,<br><br>        Plaintiff,<br><br>vs.<br><br>**OXFORD VALLEY HEALTH, LLC,** a New Jersey limited liability company,<br><br>        Defendant. | **DEFENDANT'S ANSWER TO THE COMPLAINT AND CLASS ACTION COUNTERCLAIM**<br><br>Civil No. 2:24-cv-00052-DBP |
| **OXFORD VALLEY HEALTH, LLC,** a New Jersey limited liability company, individually and as a representative on behalf of other similarly situated persons,<br><br>        Counter-Plaintiff,<br><br>vs.<br><br>**NURSA, INC.,** a Utah corporation,<br><br>        Counter-Defendant. | **PROPOSED CLASS ACTION COUNTERCLAIM** |

Defendant Oxford Valley Health, LLC ("**Oxford**" or "**Defendant**"), by and through counsel, responds to Plaintiff Nursa Inc.'s ("**Nursa**" or "**Plaintiff**") Complaint ("**Complaint**") filed on January 19, 2024 (Dkt. 1), and responds to the individually numbered paragraph as

follows:

## **PRELIMINARY STATEMENT**

1.     Oxford admits that Nursa filed this action seeking to collect certain fees under the Nursa$^{TM}$ Terms of Service Agreement ("**Agreement**"), which speaks for itself.  Oxford is without knowledge regarding the remaining allegations of paragraph 1 and therefore, Oxford denies such allegations.

## **JURISDICTION**

2.     Oxford states that the allegations in paragraph 2 of the Complaint refer to, or otherwise rely upon, a federal statute, which statute speaks for itself, and on that basis, Oxford denies the allegations in paragraph 2 of the Complaint.  Oxford further states that the allegations in paragraph 2 of the Complaint call for certain legal conclusions and therefore, Oxford denies such allegations.

## **VENUE**

3.     Oxford states that the allegations in paragraph 3 of the Complaint refer to, or otherwise rely upon, a federal statute, which statute speaks for itself, and on that basis, Oxford denies the allegations in paragraph 3 of the Complaint.  Oxford further states that the allegations in paragraph 3 of the Complaint call for certain legal conclusions and therefore, Oxford denies such allegations.

## **PARTIES**

4.     Oxford is without information sufficient to respond to the allegations of paragraph 4 and therefore, denies the same.

5.     Oxford admits the allegations of paragraph 5.

6.     Oxford admits that Mr. Rami is a member of Oxford and domiciled in New Jersey

and denies the remaining allegations of paragraph 6.

## STATEMENT OF FACTS

*The Agreement*

7.      Oxford is without information sufficient to respond to the allegations of paragraph 7 and therefore, denies the same.  Paragraph 7 of the Complaint refers to, or otherwise relies upon, certain language in the Agreement, which statute speaks for itself and, on that basis, Oxford denies those allegations in paragraph 7 of the Complaint.

8.      Oxford is without information sufficient to respond to the allegations of paragraph 8 and therefore, denies the same.  Paragraph 8 of the Complaint refers to, or otherwise relies upon, certain language in the Agreement, which statute speaks for itself and, on that basis, Oxford denies those allegations in paragraph 8 of the Complaint.

9.      Oxford is without information sufficient to respond to the allegations of paragraph 9 and therefore, denies the same.  Paragraph 9 of the Complaint refers to, or otherwise relies upon, certain language in the Agreement, which statute speaks for itself and, on that basis, Oxford denies those allegations in paragraph 9 of the Complaint.

10.      Oxford is without information sufficient to respond to the allegations of paragraph 10 and therefore, denies the same. Paragraph 10 of the Complaint refers to, or otherwise relies upon, certain language in the Agreement, which statute speaks for itself and, on that basis, Oxford denies those allegations in paragraph 10 of the Complaint.  Oxford further states that the allegations in paragraph 10 of the Complaint call for certain legal conclusions and, therefore, Oxford denies such allegations.

11.      Oxford is without information sufficient to respond to the allegations of paragraph 11 and therefore, denies the same. Paragraph 11 of the Complaint refers to, or otherwise relies

upon, certain language in the Agreement, which statute speaks for itself and, on that basis, Oxford denies those allegations in paragraph 11 of the Complaint. Oxford further states that the allegations in paragraph 11 of the Complaint call for certain legal conclusions and, therefore, Oxford denies such allegations.

12.    Oxford is without information sufficient to respond to the allegations of paragraph 12 and, therefore, denies the same. Paragraph 12 of the Complaint refers to, or otherwise relies upon, certain language in the Agreement, which statute speaks for itself and, on that basis, Oxford denies those allegations in paragraph 12 of the Complaint. Oxford further states that the allegations in paragraph 12 of the Complaint call for certain legal conclusions and, therefore, Oxford denies such allegations.

13.    Oxford is without information sufficient to respond to the allegations of paragraph 13 and, therefore, denies the same. Paragraph 13 of the Complaint refers to, or otherwise relies upon, certain language in the Agreement, which statute speaks for itself and, on that basis, Oxford denies those allegations in paragraph 13 of the Complaint.

14.    Oxford is without information sufficient to respond to the allegations of paragraph 14 and, therefore. denies the same. Paragraph 14 of the Complaint refers to. or otherwise relies upon, certain language in the Agreement, which statute speaks for itself and, on that basis, Oxford denies those allegations in paragraph 14 of the Complaint. Oxford further states that the allegations in paragraph 14 of the Complaint call for certain legal conclusions and, therefore, Oxford denies such allegations.

15.    Oxford is without information sufficient to respond to the allegations of paragraph 15 and, therefore, denies the same. Paragraph 15 of the Complaint refers to, or otherwise relies upon, certain language in the Agreement, which statute speaks for itself and, on that basis, Oxford

denies those allegations in paragraph 15 of the Complaint. Oxford further states that the allegations in paragraph 15 of the Complaint call for certain legal conclusions and, therefore, Oxford denies such allegations.

16.    Paragraph 16 of the Complaint refers to, or otherwise relies upon, certain language in the Agreement, which statute speaks for itself and, on that basis, Oxford denies those allegations in paragraph 16 of the Complaint. Oxford further states that the allegations in paragraph 16 of the Complaint call for certain legal conclusions and, therefore, Oxford denies such allegations.

17.    Oxford is without information sufficient to respond to the allegations of paragraph 17 and, therefore, denies the same. Paragraph 17 of the Complaint refers to, or otherwise relies upon, certain language in the Agreement, which statute speaks for itself and, on that basis, Oxford denies those allegations in paragraph 17 of the Complaint.

18.    Paragraph 18 of the Complaint refers to, or otherwise relies upon, certain language in the Agreement, which statute speaks for itself and, on that basis, Oxford denies those allegations in paragraph 18 of the Complaint. Oxford further states that the allegations in paragraph 18 of the Complaint call for certain legal conclusions and, therefore, Oxford denies such allegations.

19.    Oxford is without information sufficient to respond to the allegations of paragraph 19 and, therefore, denies the same. Paragraph 19 of the Complaint refers to, or otherwise relies upon, certain language in the Agreement, which statute speaks for itself and, on that basis, Oxford denies those allegations in paragraph 19 of the Complaint.

20.    Oxford is without information sufficient to respond to the allegations of paragraph 20 and, therefore, denies the same. Paragraph 20 of the Complaint refers to, or otherwise relies upon, certain language in the Agreement, which statute speaks for itself and, on that basis, Oxford denies those allegations in paragraph 20 of the Complaint. Oxford further states that the allegations

in paragraph 20 of the Complaint call for certain legal conclusions and, therefore, Oxford denies such allegations.

21.    Oxford is without information sufficient to respond to the allegations of paragraph 21 and, therefore, denies the same. Paragraph 21 of the Complaint refers to, or otherwise relies upon, certain language in the Agreement, which statute speaks for itself and, on that basis, Oxford denies those allegations in paragraph 21 of the Complaint.

22.    Oxford is without information sufficient to respond to the allegations of paragraph 22 and, therefore, denies the same. Paragraph 22 of the Complaint refers to, or otherwise relies upon, certain language in the Agreement, which statute speaks for itself and, on that basis, Oxford denies those allegations in paragraph 22 of the Complaint.  Oxford further states that the allegations in paragraph 22 of the Complaint call for certain legal conclusions and, therefore, Oxford denies such allegations.

23.    Oxford is without information sufficient to respond to the allegations of paragraph 23 and therefore denies the same. Paragraph 23 of the Complaint refers to, or otherwise relies upon, certain language in the Agreement, which statute speaks for itself and, on that basis, Oxford denies those allegations in paragraph 23 of the Complaint.  Oxford further states that the allegations in paragraph 23 of the Complaint call for certain legal conclusions and, therefore, Oxford denies such allegations.

*Oxford's Use of the App and Acceptance of the Agreement*

24.    Oxford admits that it used Nursa's App (the "**App**") after June 1, 2022, and denies the remaining allegations in paragraph 24 in the Complaint.  Paragraph 24 of the Complaint refers to, or otherwise relies upon, certain language in the Agreement, which statute speaks for itself and, on that basis, Oxford denies those allegations in paragraph 24 of the Complaint.

25.     Oxford admits that it used Nursa's App and denies the remaining allegations in paragraph 25 in the Complaint.

26.     Oxford admits that it received invoices from Nursa, but is without information sufficient to respond to the remaining allegations of paragraph 26 in the Complaint and, therefore, denies the same.

27.     Oxford admits that it used Nursa's App to schedule shifts with certain clinicians and denies the remaining allegations in paragraph 27 in the Complaint.

28.     Oxford admits that it received invoices from Nursa, but is without information sufficient to respond to the remaining allegations of paragraph 28 in the Complaint and, therefore, denies the same.

29.     Oxford denies the allegations in paragraph 29 in the Complaint.

30.     Oxford denies the allegations in paragraph 30 in the Complaint.

31.     Oxford admits that it discussed the invoices received from Nursa in 2023, but denies remaining allegations of paragraph 31 in the Complaint.

32.     Oxford admits that Nursa terminated Oxford's access to the App, but denies the remaining allegations of paragraph 32 in the Complaint. Paragraph 32 of the Complaint refers to, or otherwise relies upon, certain language in the Agreement, which statute speaks for itself and, on that basis, Oxford denies those allegations in paragraph 32 of the Complaint.

33.     Oxford admits that Nursa terminated Oxford's access to the App but denies the remaining allegations of paragraph 33 in the Complaint.

34.     Oxford denies the allegations in paragraph 34 in the Complaint.

35.     Oxford denies the allegations in paragraph 35 in the Complaint.

36.     Oxford admits that it claimed that Nursa was engaged in systematic overbilling

practices, but denies the allegations in paragraph 36 in the Complaint.

37.     Paragraph 37 of the Complaint refers to, or otherwise relies upon, certain language in the Agreement, which statute speaks for itself and, on that basis, Oxford denies those allegations in paragraph 37 of the Complaint.

38.     Oxford denies the allegations in paragraph 38 in the Complaint.

39.     Paragraph 39 of the Complaint refers to, or otherwise relies upon, certain language in the Agreement, which statute speaks for itself and, on that basis, Oxford denies those allegations in paragraph 39 of the Complaint.

40.     Paragraph 40 of the Complaint refers to, or otherwise relies upon, certain language in the Agreement, which statute speaks for itself and, on that basis, Oxford denies those allegations in paragraph 40 of the Complaint.

**FIRST CAUSE OF ACTION**
**Breach of Contract**

41.     Oxford incorporates by reference its responses to all prior allegations as if fully set forth herein.

42.     Oxford states that the allegations in paragraph 42 of the Complaint call for certain legal conclusions and, therefore, Oxford denies such allegations.

43.     Oxford denies the allegations in paragraph 43 in the Complaint.

44.     Oxford denies the allegations in paragraph 44 in the Complaint.

45.     Oxford denies the allegations in paragraph 45 in the Complaint.

46.     Oxford denies the allegations in paragraph 46 in the Complaint.

**SECOND CAUSE OF ACTION**
**Breach of the Covenant of Good Faith and Fair Dealing**
(*In the Alternative*)

47.     Oxford incorporates by reference its responses to all prior allegations as if fully set

forth herein.

48. Oxford states that the allegations in paragraph 48 of the Complaint call for certain legal conclusions and, therefore, Oxford denies such allegations.

49. Oxford states that the allegations in paragraph 49 of the Complaint call for certain legal conclusions and, therefore, Oxford denies such allegations.

50. Oxford denies the allegations in paragraph 50 in the Complaint.

51. Oxford denies the allegations in paragraph 51 in the Complaint.

52. Oxford denies the allegations in paragraph 52 in the Complaint.

### THIRD CAUSE OF ACTION
### Unjust Enrichment
(*In the Alternative*)

53. Oxford incorporates by reference its responses to all prior allegations as if fully set forth herein.

54. Oxford states that the allegations in paragraph 54 of the Complaint call for certain legal conclusions and, therefore, Oxford denies such allegations.

55. Oxford states that the allegations in paragraph 55 of the Complaint call for certain legal conclusions and, therefore, Oxford denies such allegations.

56. Oxford denies the allegations in paragraph 56 in the Complaint.

57. Oxford denies the allegations in paragraph 57 in the Complaint.

58. Oxford denies the allegations in paragraph 58 in the Complaint.

59. Oxford denies the allegations in paragraph 59 in the Complaint.

60. Oxford denies the allegations in paragraph 60 in the Complaint.

### PRAYER FOR RELIEF AND GENERAL DENIAL

Oxford denies any and all remaining allegations, cause of action, or claim for relief in

Nursa's Complaint not expressly admitted herein. Oxford further denies that Nursa is entitled to any and all of the relief requested in Nursa's Prayer for Relief set forth in the Complaint.

## AFFIRMATIVE DEFENSES

Oxford sets forth below its affirmative defenses. In doing so, Oxford incorporates the allegations in its Counterclaim, as if fully set forth herein. By setting forth these affirmative defenses, Oxford does not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Nursa.

Moreover, nothing stated herein is intended, or shall be construed as, an admission that any particular issue or subject matter is relevant to Nursa's allegations. Oxford has not knowingly or intentionally waived any applicable defenses, and hereby, reserves the right, to the extent permitted by applicable law, to assert and rely upon other defenses and affirmative defenses that become available or apparent, as this matter proceeds. Oxford reserves the right to amend or seek to amend its answers and/or its affirmative defenses, as additional facts concerning its defenses become known to Oxford.

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Nursa's claims are barred by its own breach of contract, unclean hands, and other culpable conduct.

### THIRD AFFIRMATIVE DEFENSE

Nursa's claims are barred, in whole or in part, by the doctrines of estoppel, laches and waiver.

## FOURTH AFFIRMATIVE DEFENSE

Nursa's claims are barred, in whole or in part, based on the doctrines of course of conduct, mistake, impossibility, impracticality, frustration of purpose, and/or accord and satisfaction.

## FIFTH AFFIRMATIVE DEFENSE

Nursa's claims are barred, in whole or in part, based on the doctrine of avoidable consequences and Nursa's failure to mitigate damages, if any.

## SIXTH AFFIRMATIVE DEFENSE

Nursa's claims are barred, in whole or in part, based on lack, or absence of, reasonable reliance, Nursa's own knowledge (whether based upon actual or constructive notice/knowledge), failure to act with diligence, release, and consent.

## SEVENTH AFFIRMATIVE DEFENSE

Some or all of the damages of which Nursa complains, are the result, or the fault and/or actions of, third parties over whom Oxford had not control, and/or the result of intervening causes.

## EIGHTH AFFIRMATIVE DEFENSE

Nursa's claims may be barred, in whole or in part, by payment.

## NINTH AFFIRMATIVE DEFENSE

Nursa's claims may be barred, in whole or in part, by reason of unconscionability.

## TENTH AFFIRMATIVE DEFENSE

Nursa's claims may be barred, in whole or in part, as contrary to public policy.

## ELEVENTH AFFIRMATIVE DEFENSE

Nursa has failed to allege a legally sufficient basis, in fact or in law, upon which to predicate an award of attorney's fees.

## TWELFTH AFFIRMATIVE DEFENSE

Nursa's claims may be barred or limited, to the extent that Nursa has failed to act in good faith and/or has breached the covenant and duty of good faith and fair dealing.

## THIRTEENTH AFFIRMATIVE DEFENSE

Nursa's claims may be barred, in whole or in part, by reason of operation or failure of conditions precedent.

## RESERVATION OF AFFIRMATIVE AND OTHER DEFENSES

Oxford may have additional defenses that are not currently known to it, but that may be discovered during the course of this case, and Oxford reserves the right to plead and raise such additional defenses, as such become known to Oxford.

## PRAYER FOR RELIEF

Wherefore, having fully answered the Complaint, Oxford requests that the same be dismissed with prejudice; that Nursa take nothing thereby; that Oxford be awarded its reasonable attorney's fees and costs incurred in connection with this action, as allowed by applicable law; and that Oxford be awarded such other and additional relief as may be deemed just, equitable, or proper.

## CLASS ACTION COUNTERCLAIM

Defendant/Counter-Plaintiff Oxford Valley Health, LLC ("**Oxford**") by and through counsel, pursuant to Rules 13 and 23 Federal Rules of Civil Procedure, and DUCivR 23-1, individually and as a representative of similarly situated persons, submits its counterclaim against Plaintiff/Counter-Defendant Nursa, Inc. ("**Nursa**"), and alleges as follows:

## PARTIES

1.     Oxford is a New Jersey limited liability company with its principal place of business in Toms River, New Jersey, and its members are domiciled in New Jersey.

2.     Upon information and belief, Nursa is a Utah corporation with its principal place of business in Murray, Utah.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction further to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs, and minimal diversity exists because at least one class member and Nursa are citizens of different states.

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 139l(b)(2) because the events or omissions giving rise to the counterclaims occurred in this district and under 28 U.S.C. § 1404 because the parties consented to venue in this district.

## GENERAL ALLEGATIONS

***Nursa's intake process, 48-hour verification requirement, and overbilling practices***

5.     Oxford is a skilled nursing facility healthcare service provider located in Arizona and Nevada that provides various services with a focus on behavioral health related care.

6.     Nursa is a software company that connects healthcare facilities with healthcare

clinicians operating as independent contractors who use Nursa's software application ("**App**").

7.    Nursa's App allows subscribed healthcare facilities to post various job shifts to be filled by independent healthcare clinicians.

8.    Thereafter, the healthcare clinician can select and apply for the job posting through the App, allowing the healthcare facility to review and approve the clinician candidate.

9.    The App will also present an estimated charge for the shift posted, depending on various factors.

10.    Once approved, the healthcare facility must click "I Agree" on the App that triggers the Nursa$^{TM}$ Terms of Service Agreement ("**Agreement**"), which is attached as **Exhibit 1**.

11.    After the clinician completes the work, Nursa provides a shift report to the healthcare facility for its review.

12.    Nursa's overbilling scheme begins with its impractical 48-hour shift report verification process, which states as follows:

> Facility shall review and verify shift reports upon submission from a Clinician.  In the event that shift reports are not reviewed nor verified by the Facility with 48 business hours, the parties shall accept auto-verified shift reports.  Any auto-verified shift report shall be deemed accepted by the parties as true and correct.

(Agreement, § 9(a)).

13.    If a healthcare facility contests the shift report, Nursa imposes a lengthy and arduous challenge process that entails, among other things, scrutinizing each line item only to have Nursa place the blame for any errors or omission back on the healthcare facility.

14.    Once a shift report has been "verified" and "deemed accepted," as described above, Nursa finalizes the charges, pays the clinician for the work completed, and invoices the facility.

15.    Nursa's invoices routinely include over 100 individual shift entries that each

include, among other things, the (i) job ID; (ii) clinician's personal information; (iii) total hours worked; (iv) total time for any breaks taken during the shift; (v) billing rate; and (vi) the amount billed.

16.     The healthcare facility has thirty (30) days from the date of the invoice to notify Nursa in writing of any errors, charges, omissions, or corrections among the hundreds of shift entries. (*Id.*, § 9(d)).

17.     Should the healthcare facility fail to timely notify Nursa of any overbilling concerns, "all Charges shall be deemed correct, accurate, and without objection," and Nursa imposes a late fee equating to "the lesser of 1.5% per month of the unpaid balance (multiplied against your bill balance and compounded daily), or the highest rate permitted by law." (*Id.*, § 9(e)).

### *Nursa's widespread overbilling on the Oxford facilities*

18.     In or around June 2022, Oxford began utilizing Nursa's services through its App.

19.     Oxford used the App to find clinicians to work at it three facilities, including Desert Peak Care Center; Mission Pines Nursing and Rehabilitation; and Mountain View Care Center.

20.     During this period, clinicians selected shifts posted by Oxford on the App and, after being approved by Oxford, worked those shifts at healthcare facilities operated by Oxford.

21.     For each week during the relevant period, Nursa sent Oxford an invoice for services rendered for these facilities.

22.     In or about August 2023, Nursa claimed that Oxford had an unpaid principal balance of $4,221,488.99 and $440,134.46 in accrued late fees, for a total amount of $4,661,583.45.

23.     In response, Oxford spent significant time and resources to perform a detailed

internal audit of the invoiced shifts supporting the purported outstanding balance for the Oxford facilities.

24.     Oxford's audit included a careful view of dozens of the invoices, which, as stated above, typically include 100 individual shift entries for a single invoice.

25.     As such, Oxford tediously reviewed and meticulously reconciled, line by line, each shift billed in the invoice, while cross-referencing those specific entries with Oxford's facility records.

26.     After completing the audit process, Oxford discovered an alarming amount of overbilling by Nursa.

27.     Oxford has used other agencies that perform the same function as Nursa, but it has never seen this level of problematic shift reports and overbilling.

28.     By way of example, based on invoices for August and September of 2022, of the 600 separate line items/job shifts invoiced for the two months, Oxford has ***no record of approximately 203 of the job shifts (or 33%) confirming that the clinician actually showed up and completed the requisite work.***

29.     Upon information and belief, a substantial portion of the job shifts did not have any clock in/out records, or any other form of documentation to substantiate that the clinician performed the work during the invoiced shifts.

30.     Upon information and belief, a significant number of clinicians either did not show up for the invoiced shifts, or did not work their full shifts.

31.     Upon information and belief, video records from the Oxford facilities will verify that Nursa consistently billed Oxford for shifts in which the clinicians either did not show up or did not work their full shifts.

32.     Consequently, Nursa billed Oxford for healthcare services that were not rendered.

33.     Oxford notified Nursa, on multiple occasions, of its pervasive overbilling and Oxford's alarming discovery that a substantial portion of the invoices included work that was never performed.

34.     Consistent with its allegations in the Complaint, Nursa refused to take a proactive approach to investigate these serious issues, but conveniently relied on the 48-hour audit provision under the Agreement to claim that the shifts reports were deem "accepted" ***regardless if the work was actually performed.***

35.     Upon information and belief, Nursa knew, or should have known, that it was demanding payment from Oxford for healthcare services that were not performed.

36.     Additionally, Nursa charged for cancellations and "urgent" booking well above a reasonable market rate.

37.     Oxford explained to Nursa that it is impossible to comply with the 48-hour audit requirement, given the volume of Nursa's overbilling and questionable shift reports.

38.     Likewise, even when Oxford timely contested the shift reports within the 48-hour audit window, Nursa's process to contest the invoiced shifts is lengthy, tedious, and very difficult to comply with.

39.     So, making matters worse, while Oxford attempted to comply with Nursa's process to contest the past invoices, Nursa continued to send the new shift reports and weekly invoices that were filled with more errors and rampant overbilling.

40.     Nursa created a scheme under which it overzealously invoiced Oxford if there was even the mere possibility that a worker fulfilled even a portion of the shift; aggressively enforced the 48-hour audit period that was impossible for Oxford to comply with given the volume of

questionable shifts and billing; and intentionally created a time-consuming and inefficient process for Oxford to contest its billing practices.

41.     Upon information and belief, Nursa intentionally designed this verification and billing structure in such a way as to harm Oxford and the hundreds of other similarly-situated healthcare facilities using Nursa's services.

42.     Upon information and belief, Nursa's scheme puts Oxford and other similarly-situated healthcare facilities in the impossible position of having to choose to either (i) expend significant resources away from its core business operations to engage in the grueling process of challenging thousands of line-by-line billing entries, with no guaranty that Nursa will correct its invoices to appropriate amount or waive any interest or late fees; or (ii) submit to Nursa's aggressive collection demands and threat of litigation and pay the full amount of the invoice, knowing that a substantive portion of invoiced work was not rendered.

43.     What is clear is that Nursa is more interested in maximizing the realization rate of its invoices and collecting interest and late fees, rather than addressing the fundamental structural problems in its billing and verification processes that harm Oxford and the hundreds of other similarly-situated healthcare facilities.

44.     Unfortunately, this pattern of agencies, like Nursa, overcharging facilities extends industry-wide and has become so rampant that it has triggered certain government investigations that resulted in regulatory penalties.

45.      A growing number of states are implementing regulations to curb questionable practices by such agencies, including price gouging; conversion fees; and a general lack of transparency.

## CLASS ACTION ALLEGATIONS

**A.      The Definition of the Proposed Class.**

46.      Oxford brings this action as a class action on behalf of the following defined Class:

> The Class: All healthcare facilities who have been, or currently are, parties to Nursa's Agreement and suffered damages arising out of Nursa's overbilling practices during the Class Period.

47.      "Class Period" is defined as the time from January 1, 2019, through the date that judgment is entered, based upon information and belief that Nursa's overbilling practices, as described more fully herein, are continuing.

48.      Oxford and members of the Class herein reserve the right to amend this Counterclaim to reflect a different Class Period, as discovery in this matter proceeds.

**B.      Numerosity: The Size of the Proposed Class.**

49.      Upon information and belief, Oxford alleges that during the Class Period, hundreds of Class members have been harmed by Nursa's overbilling practices considering that Nursa contends that it conducts business with more than 1,300 facilities nationwide.

50.      Because so many facilities have been harmed by Nursa's overbilling practices under the Agreement, the members of the Class are so numerous that joinder of all members is impossible and/or impracticable.

**C.      The Adequacy of Representation by the Class Representative and the Rule 23(b)(3) Factors.**

51.      Oxford will fairly and adequately represent and protect the interests of Class members in that Oxford has no disabling conflicts of interest that would be antagonistic to those of the other Class members.

52.      Oxford seeks no relief that is antagonistic or adverse to the Class members, and the infringement of rights and the damages Oxford has suffered are typical of other Class members.

53.     Oxford has also retained counsel experienced in complex class action litigation, and Oxford intend to prosecute this action vigorously.

54.     Questions of law or fact common to Class members predominate over any questions solely affecting individual Class members and class action is superior to other available methods for the fair and efficient adjudication of this controversy.

55.     Class action treatment will allow a large number of similarly-situated Class members to simultaneously and efficiently prosecute the common claims in a single forum, without the needless duplication of effort and expense that numerous individual actions would entail.

56.     In addition, a class action will serve the important public interest of permitting Class members harmed by Nursa's overbilling practices under the Agreement to effectively pursue recovery of the sums owed to them.

57.     Oxford knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

**D.     Commonality & Predominance: The Common Questions of Law and Fact.**

58.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact, that are relevant to the adjudication of Class members claims are as follows:

a.     Whether Nursa engaged in a pattern of overbilling practices under the Agreement with Oxford and the Class members;

b.     Whether Nursa overcharged Oxford and the Class members for cancellations and "urgent" booking well above a reasonable market rate;

c.      Whether Nursa invoiced Oxford and the Class members for healthcare services that were not rendered;

d.      Whether Nursa knew, or should have known, that it invoiced Oxford and the Class members for healthcare services that were not rendered;

e.      Whether Nursa investigated whether it charged Oxford and the Class members for healthcare services that were not rendered;

f.      Whether Nursa refused to reimburse Oxford and the Class members for healthcare services that were not rendered;

g.      Whether Nursa breached the Agreement arising out of its overbilling practices with Oxford and the Class members;

h.      Whether Nursa breached the implied covenant of good faith and fair dealing under the Agreement, based on its overbilling practices with Oxford and the Class members;

i.      Whether Nursa was unjustly enriched, based on its overbilling practices with Oxford and the Class members; and

j.      Whether Oxford and Class members sustained damages, and if so, the proper measure of such damages, as well as interest, penalties, costs, attorneys' fees, and equitable relief.

**E.      The Typicality of Claims or Defenses of the Class Representative.**

59.      Oxford's claims are typical of the members of the Class. Oxford, like other members of the Class, is subject to the Agreement and Nursa's overbilling practices, as set forth above.  Oxford is a healthcare facility who provides services typical of those of other Class members.

### F.    The Nature of the Notice to the Proposed Class.

60.    Membership in the Classes can be determined by objective records maintained by Nursa and adequate notice can be given to Class members directly, using information maintained in Nursa's records.

## FIRST CAUSE OF ACTION
### Breach of Agreement

61.    Oxford incorporates all of the foregoing allegations as if fully set forth herein.

62.    In or about June 2022, Oxford and Nursa entered into the Agreement, which is a valid and binding contract.

63.    Oxford fully performed its obligations under the Agreement.

64.    Nursa has breached its obligations under the Agreement by, among other things, (i) charging Oxford for healthcare services that were not rendered; (ii) overcharging for cancellations and "urgent" booking well above a reasonable market rate; (iii) refusing to reimburse Oxford for healthcare services that Nursa knew, or should have known, were not rendered; and (iv) failing to investigate whether it charged for healthcare services that were not rendered, despite receiving written notice from Oxford.

65.    By reason of the foregoing, Oxford has suffered damages in an amount to be determined at trial, with all applicable interest, costs, fees, and expenses, including attorney's fees.

## SECOND CAUSE OF ACTION
### Breach of Implied Covenant of Good Faith and Fair Dealing – Agreement

66.    Oxford incorporates all of the foregoing allegations, as if fully set forth herein.

67.    An implied covenant of good faith and fair dealing inheres in every contract. This covenant imposes a duty on each party to exercise faithfulness to the agreed common purpose of the contract, and to act consistently with the justified expectations of the other party or parties.

68.     In or about June 2022, Oxford and Nursa entered into the Agreement, which is a valid and binding contract.

69.     Oxford complied with its obligations under the implied covenant of good faith and fair dealing.

70.      Nursa has failed to act faithfully and consistently with the common purpose of the Agreement and the justified expectations of Oxford.

71.     Nursa has also failed to act in good faith.

72.     Specifically, Nursa has breached the implied covenant of good faith by, among other things, (i) charging Oxford for healthcare services that were not rendered; (ii) overcharging for cancellations and "urgent" booking well above a reasonable market rate; (iii) refusing to reimburse Oxford for healthcare services that Nursa knew, or should have known, were not rendered; and (iv) failing to investigate whether it charged for healthcare services that were not rendered, despite receiving written notice from Oxford.

73.     By reason of the foregoing, Oxford has suffered damages in an amount to be determined at trial, with all applicable interest, costs, fees, and expenses, including attorney's fees.

## THIRD CAUSE OF ACTION
### Unjust Enrichment

74.     Oxford incorporates all of the foregoing allegations as if fully set forth herein.

75.     Oxford conferred a benefit on Nursa by paying for invoiced healthcare services under the Agreement.

76.     Nursa knew of, and accepted, that benefit by accepting payment for the invoiced healthcare services.

77.     Nursa accepted payment from Oxford for healthcare services that were not rendered.

78.     As such, it would be inequitable for Nursa to accept payment from Oxford for healthcare services that were not rendered.

79.     Oxford conferred a benefit on Nursa by paying for healthcare services that were not rendered, in an amount to be determined at trial.

80.     Oxford has been damaged by Nursa's refusal to pay that amount, in recompence for the benefit provided.

81.     Oxford is entitled to an award for its damages as provided in the Agreement, along with its attorney's fees and costs, as provided in the Agreement.

## **PRAYER FOR RELIEF**

WHEREFORE, Oxford respectfully requests that the Court enter judgment in its favor and against Nursa on all counts where such relief is applicable:

(i)     For an Order certifying the Class (as defined herein) and appointing Oxford as Class Representatives and Oxford's counsel as Class counsel;

(ii)    For an award of actual damages, compensatory damages, statutory damages and statutory penalties, in an amount to be determined by this Court;

(iii)   For an award of Costs, pre- and post-judgment interest, expenses, and attorneys' fees; and

(iv)    Such other and further relief as the Court deems just and proper.

Dated:   March 15, 2024

Respectfully submitted,

**SNELL & WILMER L.L.P.**


By: */s/  John A. Wirthlin*
     Matthew L. Lalli
     John A. Wirthlin

*Attorneys for Defendant/Counter-Plaintiff*
*Oxford Valley Health, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 15th day of March, 2024, I caused the foregoing *ANSWER AND CLASS ACTION COUNTERCLAIM* to be served on the following by submitting a copy for electronic filing:

R. Jeremy Adamson
Taylor J. Smith
KUNZLER BEAN & ADAMSON, PC
50 West Broadway, Ste. 1000
Salt Lake City, Utah 84101
jadamson@kba.law
tsmith@kba.law

*Attorneys for Plaintiff/Counter-Defendant, Nursa, Inc.*

*/s/ Edela Irvin*